**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IKEA SUPPLY AG, *Plaintiff*, v. CONVOY, INC., et al. *Defendants*. | No. 1:24-cv-00051 |

**JOINT STATUS REPORT**

1. **The Nature of the Case**:
   A. **Identify (names and contact information) for all attorneys of record for each party, including the lead trial attorney.**

   Daniel T. Graham
   Timothy R. Herman (lead trial attorney)
   Sam Hallman
   Stephen M. Wolf
   130 E. Randolph St., Ste. 3900
   Chicago, IL 60601
   dgraham@clarkhill.com
   therman@clarkhill.com
   shallman@clarkhill.com
   smwolf@clarkhill.com
   *Counsel for IKEA Supply AG ("IKEA")*

   Rachel Mongiello, Esq.
   Stuart Komrower, Esq.
   25 Main Street
   Hackensack, NJ 07601
   rmongiello@coleschotz.com
   skomrower@coleschotz.com
   *Counsel for Hercules Capital, Inc. ("Hercules")*

   B. **Briefly describe the nature of the claims asserted in the complaint and any counterclaims and/or third-party claims**.

   This is an interpleader action brought by IKEA against Convoy, its lender Hercules, and Convoy's contracted carriers that provided transportation services to Convoy's customer IKEA. Specifically, IKEA and Convoy entered into a written master services contract ("Frame Agreement") pursuant to which Convoy agreed to provide IKEA with services for the transportation of IKEA products and goods to and from locations in the U.S. It is IKEA's position that, under the Frame Agreement, IKEA's payment to Convoy was conditioned upon Convoy's prior payment to the carrier, among other things. Hercules disputes IKEA's interpretation of the

governing agreements, and it is Hercules' position that IKEA is not acting as a disinterested stakeholder and is perverting the purposes of the interpleader statute by taking a substantive position as to how the money should be distributed. In addition to the Frame Agreement, Convoy and IKEA entered into a written sub-agreement that set forth the rates and other terms relative to the transportation service that would be provided ("Transport Agreement") pursuant to the Frame Agreement.

In turn, Convoy entered into separate written agreements with each of the contracted carriers ("Convoy Carrier Service Agreement") that provided transportation services for IKEA products ("Carrier Defendants"). It is IKEA's position that the Convoy Carrier Service Agreement, upon information and belief, prohibits the Carrier Defendants from seeking payment directly from IKEA or from any third party. Neither Convoy nor the Carrier Defendants have been paid in full for their services under those agreements. It is IKEA's position that after the Carrier Defendants provided transportation services to Convoy for IKEA products, Convoy ceased operations and has refused to and/or failed to remit payments it owed to the Carrier Defendants. Despite this, Convoy and/or Hercules, the latter of which foreclosed on Convoy's accounts receivables via UCC Article 9 foreclosure, have sought payment from IKEA for the amount alleged by Hercules to be owed to it as a result of the UCC Article 9 foreclosure, which totals IKEA contends totals $519,254.44 (the "Interpleaded Funds")[1]. In addition, certain Carrier Defendants, and/or factoring or collection companies that claim to have an assignment of rights to the claims by certain Carrier Defendants' claims for payment against Convoy have attempted to collect on those claims from IKEA. In order to avoid potential double liability to the Carrier Defendants, the factoring companies, collection companies, Convoy and/or Hercules, IKEA instituted this interpleader action and deposited the Interpleaded Funds with the Registry of the Court.

### C. Briefly identify the major legal and factual issues in the case.

IKEA believes that the most significant issues in this matter will be the determination as to (1) whether the unpaid charges Convoy claimed to be owed to it by IKEA were accounts receivable of Convoy and therefore were foreclosed upon by Hercules given IKEA's position that a condition precedent – Convoy's prior payment to the Carrier Defendants – to those amounts becoming due by IKEA to Convoy has not occurred; and (2) which parties are entitled to the Interpleaded Funds and in what amount. IKEA anticipates that Convoy and/or Hercules will contend that additional fees charged by Convoy to IKEA, which were not contemplated by either the Frame Agreement or the Transport Agreement, are owed to Convoy and/or Hercules, which IKEA disputes. It is IKEA's contention that Convoy and/or Hercules have provided no basis to support those charges.

Hercules notes that the issues are (i) whether IKEA deposited a sufficient amount in court (and thus whether this Court has jurisdiction) and (ii) which party(ies) is/are entitled to all or some of the Interpleaded Funds.

### D. State the relief sought by any of the parties.

---

[1] Hercules contends that the amount owed to Convoy/Hercules exceeds the $519,254.44 deposited by IKEA.

In addition to the determination of who is entitled to the Interpleaded Funds, IKEA also seeks the award of its reasonable attorney's fees and costs associated with this interpleader action.

Prior to initiating this action, IKEA and Hercules discussed how Hercules and IKEA both intended to proceed as several Carrier Defendants were pressuring IKEA directly for payment and notified IKEA of their intentions to commence litigation. On December 7, 2023, Hercules' counsel informed counsel for IKEA that Hercules intended proceed via interpleader and would provide a draft complaint in the following days. Having not received a draft complaint, IKEA's counsel initiated a follow-up discussion on December 21, 2023 during which Hercules suggested the parties proceed via an indemnification agreement in exchange for IKEA issuing the Interpleader Funds to Hercules. In addition to IKEA having to rely on Hercules to perform its indemnity obligations each time a Carrier Defendant attempted to recover payment directly from IKEA, which gave IKEA cause for concern, Hercules had previously advised IKEA that Hercules did not intend to pay the Carrier Defendants. In addition to these obstacles to an indemnification agreement, despite advising it would provide a draft indemnification agreement to IKEA for its consideration in the following days, Hercules never provided a draft indemnification agreement. The issues with the proposed indemnification agreement, Hercules' failure to timely follow-up as indicated, and pressure from the Carrier Defendants resulted in IKEA commencing this action.

Hercules strongly opposes IKEA's request for an award of its attorneys' fees and costs and disputes IKEA's version of the events leading up to IKEA's filing of the lawsuit. It is Hercules' position that, prior to IKEA's initiation of this lawsuit, Hercules and IKEA had been engaged in negotiations to alleviate IKEA's concern of potential double liability without the need for a complex interpleader action. It is Hercules' position that, during those discussions, Hercules offered and agreed to provide IKEA with a complete defense and indemnity relating to any future claims by or on behalf of the Carrier Defendants, in exchange for payment to Hercules of the amount that IKEA admittedly owes. It is Hercules' position that IKEA abruptly terminated those discussions and instituted this lawsuit. Hercules believes IKEA therefore did not face a real threat of double liability or vexatious suits from multiple claimants, and its initiation of this lawsuit is unnecessary, unreasonable, and primarily in its own self-interest. Hercules further notes that IKEA is not acting as a disinterested stakeholder by taking substantive positions on the defendants' respective entitlements to the Interpleaded Funds. For these and other reasons, it is Hercules' position that IKEA should not be permitted to recover its attorneys' fees or costs.

2. **Jurisdiction: Explain why the Court has subject matter jurisdiction over the plaintiff(s)' claim(s).**

Jurisdiction is based on the federal interpleader statute, 28 U.S.C. § 1335, which requires minimal diversity. Specifically, it requires that two (2) or more claimants to the interpleaded funds be adverse to one another and of diverse citizenship, and that the amount in controversy exceed $500. Both of those requirements have been met.

   A. **Identify all federal statutes on which federal question jurisdiction is based.**

None.

   B. **If jurisdiction over any claims is based on diversity or supplemental jurisdiction:**

(1) State whether/why the amount in controversy exceeds the jurisdictional threshold or whether there is a dispute regarding the amount in controversy (and, if so, the basis of that dispute).

The Interpleaded Funds total $519,254.44, which exceeds the jurisdictional threshold. Hercules contends that the amount owed to Convoy/Hercules exceeds the $519,254.44 deposited by IKEA.

(2) Identify the state of citizenship of each named party.

| | |
|---|---|
| IKEA | Switzerland |
| Convoy | Delaware and Washington |
| Hercules | Maryland and California |
| American Transporters Inc. | Illinois |
| Aram Trucking Inc. | Illinois |
| Assurance Trucking LLC | Illinois (including its members) |
| Batths Transportation Company | Indiana |
| Boren Trucking LLC | California (including its members) |
| Cehic Xpress Inc. | Illinois |
| Connolly Trucking LLC | Illinois (including its members) |
| Delmore Transport LLC | Wisconsin (including its members) |
| DLB Management LLC | Illinois (including its members) |
| Dominican Trucking LLC | California (including its members) |
| Eagle Radovish LLC | Illinois (including its members) |
| Eagle Speed Line Inc. | Illinois |
| Enomid Trucking LLC | California (including its members) |
| Everett Transportation Co. | Illinois |
| Family First Enterprises, LLC | California (including its members) |
| Fivejians LLC | Illinois (including its members) |
| FJ Trucking Services | California |
| Gilroy Williams Vasquez d/b/a JMB | California |
| Godette Global LLC | Indiana (including its members) |
| Heightened Sense Transport LLC | Illinois (including its members) |
| J Zuniga Trucking LLC | California (including its members) |
| Josh & Sons Express LLC | Indiana (including its members) |
| M.A. Drummer LLC | Indiana (including its members) |
| Maintain Logistics Group LLC | Georgia (including its members) |
| McBarns American Logistics LLC | Tennessee (including its members) |
| Ohio Global Transportation LLC | Ohio (including its members) |
| Parvinder Singh | California |
| Peter Transport Cargo LLC d/b/a Peter Transport Cargo | California (including its members) |
| Ramin Noori | California |
| Ramos Brothers Transport LLC | California (including its members) |

4

| | |
|---|---|
| Reico Transport Inc. | California |
| RMM Trucking, Inc. | Illinois |
| Shafer Logistics LLC | Kentucky (including its members) |
| Sikander S. Gil Corp. | Illinois |
| Somken Transport LLC | Ohio (including its members) |
| Suit & Tie Inc. | Illinois |
| Sukhraj Singh Grewal | California |
| T & D Transportation 6 LLC | Illinois (including its members) |
| TG Logistics LLC | Illinois (including its members) |
| Top Gear Transport LLC | California (including its members) |
| Turbo Freight LLC | California (including its members) |
| ZBT Logistics LLC | Illinois (including its members) |
| Alexander, Winton & Associates Inc. | Mississippi |
| Apex Capital Corp. | Texas (including its members) |
| Basic Block Inc. | Delaware and Nebraska |
| CarrierNet Group Financial, Inc. | South Dakota |
| CD Consortium Corporation | Illinois |
| Compass Funding Solutions, LLC | Illinois (including its members) |
| Eagle Business Credit, LLC d/b/a Cashway Funding | Delaware, Georgia and Illinois (including its members) |
| Finger Lakes Logistics, Inc. d/b/a Integrated Logistics Associates | New York |
| Love's Solutions, LLC | Oklahoma (including its members) |
| Operation Finance, Inc. | Texas |
| QP Capital LLC | Indiana and Kentucky (including its members) |
| RTS Financial Services, LLC | Georgia (including its members) |
| SmartTrucker, LLC | Delaware and California (including its members) |
| TransAm Financial Services, Inc. | Kansas |
| Transportation Finance Corporation | Illinois |

3. **Status of Service: Identify any defendants that have not been served.**

This action was commenced against 60 defendants on January 2, 2024 and waivers of summons and service were issued on January 9, 2024 by IKEA, and the defendants were requested to the execute the waivers within 30 days. As the time to provide the waivers has now expired, IKEA is in the process of formally serving the following 39 entities that have not yet been served:

Apex Capital Corp., Assurance Trucking LLC, Basic Block Inc., Batths Transportation Company, CarrierNet Group Financial, Inc., CD Consortium Corp., Compass Funding Solutions, LLC, Connolly Trucking LLC, Delmore Transport LLC, Eagle Speed Line Inc., Everett Transportation Co., Family First Enterprises, LLC, Finger Lakes Logistics, Inc. d/b/a Integrated Logistics Associates, Fivejians LLC, FJ Trucking Services, Gilroy Williams Vasquez d/b/a JMB, Godette Global LLC, J Zuniga Trucking LLC, Josh & Sons Express LLC, M.A. Drummer LLC, Maintain Logistics Group LLC, McBarns American Logistics LLC, Ohio Global Transportation LLC,

5

Operation Finance, Inc., Peter Transport Cargo LLC d/b/a Peter Transport Cargo, Ramin Noori d/b/a Noori Trucking, Ramos Borthers Transport LLC, Reico Transport Inc., Shafer Logistics LLC, Sikander S. Gil Corp., SmartTrucker, LLC, Suit & Tie Inc., TG Logistics LLC, Top Gear Transport LLC, TransAm Financial Services, Inc., Transportation Finance Corp., Turbo Freight LLC, and ZBT Logistics LLC.

A total of 21 defendants returned executed waivers of service and summons, all of which have been filed with the Court.

4. **Consent to Proceed Before a United States Magistrate Judge: Confirm that counsel have advised the parties that they may proceed before a Magistrate Judge if they consent unanimously and advise whether there is, or is not, unanimous consent. Do NOT report whether individual parties have so consented.**

Given the status of service and that not all parties have counsel, the undersigned cannot report that all parties have consented to proceed before a Magistrate Judge.

5. **Motions:**
   **A. Briefly describe any pending motions.**

There are no pending motions. IKEA's Motion for Leave to Deposit Funds into the Court's Registry was granted on January 16, 2024, and the funds have since been deposited. Further, the Motions to Appear Pro Hac Vice filed by Stephen Wolf and Sam Hallman, counsel for IKEA, were granted on January 29, 2024. Counsel for Hercules (Stuart Komrower, Rachel Mongiello, and Catherine Costagliola of Cole Schotz PC) filed Motions to Appear Pro Hac Vice on February 27, 2024.

   **B. State whether the defendant(s) anticipate responding to the complaint by filing an Answer or by means of motion.**

Unknown at this present time.

6. **Case Plan:**

Given the number of defendants, including those that remain to be served, IKEA proposes conducting another status conference in approximately sixty (60) days regarding the status of service and the matter generally. Further, in order to establish reasonable discovery deadlines and procedures that assist in the efficient administration of this matter with many parties, IKEA further proposes a separate status conference with the Magistrate Judge in ninety (90) days to discuss and establish discovery deadlines and procedures with all of the parties that appear in this matter. In the alternative, IKEA proposed the following dates and deadlines.

Hercules believes that once all of the defendants have been served and their time to answer has expired, default judgments should be entered promptly against the non-appearing defendants, confirming that they have waived any rights to the Interpleaded Funds, and IKEA should be promptly discharged pursuant to 28 U.S.C. § 2361. Hercules further believes that discovery is not necessary for the resolution of this dispute and that, upon IKEA's discharge and the entry of default

judgments against the non-appearing defendants, the remaining parties should file dispositive motions concerning entitlement to the Interpleaded Funds. Hercules further notes that because IKEA is a purportedly disinterested stakeholder seeking discharge from the lawsuit, IKEA should not weigh in on the proposed schedule for discovery between the defendants. IKEA's request for a prolonged discovery schedule appears to be a self-interested attempt to drive up its attorneys' fees that it will seek to recover from the Interpleaded Funds.

**A. Submit a proposal for a discovery plan, including the following information:**

(1) The general type of discovery needed;

IKEA believes that most discovery regarding the Carrier Defendants and any factoring or collection companies, which primarily concern proof of the rendering of services, the value of the services, and any assignment of rights to payment to any factoring or collection companies, can be completed through Initial Disclosures. IKEA anticipates several parties will need to conduct written discovery through interrogatories, requests for production of documents and/or requests for admissions, particularly as it relates to the factual and legal issues between and among IKEA, Convoy, and Hercules. Once written discovery and documents are exchanged by the parties, IKEA anticipates there will be a need for a limited number of depositions primarily relating to the issues between and among IKEA, Convoy, and Hercules.

Hercules believes that discovery is not needed to resolve this matter. If, however, discovery is permitted, Hercules proposes the following dates.

(2) A date for Rule 26(a)(1) disclosures;

IKEA: June 7, 2024.

Hercules: May 24, 2024.

(3) First date by which to issue written discovery;

IKEA: July 12, 2024.

Hercules: June 7, 2024.

(4) A fact discovery completion date;

IKEA: February 7, 2025.

Hercules: October 11, 2024

(5) An expert discovery completion date, including dates for the delivery of expert reports; and

IKEA: March 7, 2025 for expert reports for parties with the burden of proof, April 11, 2025 for all rebuttal expert reports, and May 9, 2025 for any expert depositions.

Hercules: does not believe that expert discovery will be necessary or appropriate for resolution of this dispute. If needed, Hercules proposes November 8, 2024 for affirmative expert reports, December 6, 2024 for rebuttal reports, and January 10, 2025 for expert depositions.

(6) A date for the filing of dispositive motions.

IKEA's position is that all dispositive motions should be filed by May 23, 2025, once discovery is complete, responses to any dispositive motions to be filed by June 23, 2025, and any replies to dispositive motions to be filed by July 7, 2025.

Hercules believes dispositive motions can be filed at the outset of the case. If the court determines that dispositive motions must await discovery, Hercules proposes January 31, 2025 for the filing of dispositive motions, oppositions by February 28, 2025, and replies by March 14, 2025.

B. With respect to trial, indicate the following:

(1) Whether a jury trial is required; and

IKEA and Hercules do not require a jury trial.

(2) The probable length of trial.

At this present time, IKEA anticipates that trial will take between five (5) and eight (8) days depending upon the number of parties and issues remaining at the time of trial.

Hercules does not believe that a trial will be necessary, but if one is required, no more than three (3) days will be necessary for trial.

7. **Status of Settlement Discussions:**
   **A. Indicate whether any settlement discussions have occurred;**

IKEA contends that no settlement discussions have occurred, only those set forth in Section 1(D), which it incorporates by reference in lieu of restating.

Hercules: Prior to the initiation of this lawsuit, Hercules and IKEA engaged in settlement discussions. It is Hercules' position that it offered to provide IKEA a complete defense and indemnity against claims asserted on or behalf of carriers, in exchange for IKEA tendering payment in full to Hercules. IKEA never formally rejected this offer and instead filed this lawsuit.

**B. Describe the status of any settlement discussions; and**

There are not any current settlement discussions.

**C. Whether the parties request a settlement conference.**

At this present time, IKEA and Hercules believe a settlement conference would be beneficial once all parties have been served and answered the Interpleader Complaint.

        Respectfully Submitted:

        IKEA SUPPLY AG, Plaintiff

By:   */s/ Timothy R. Herman*
       One of its Attorneys

Daniel T. Graham
Timothy R. Herman
Clark Hill PLC
130 E. Randolph Street
Suite 3900
Chicago, Illinois 60601
T: (312) 985-5900
F: (312) 985-5999
dgraham@clarkhill.com
therman@clarkhill.com

Sam Hallman (*Pro Hac Vice*)
Clark Hill PLC
2600 Dallas Parkway
Suite 600
Frisco, Texas 75034
T: (469) 287-3957
F: (469) 227-6570
shallman@clarkhill.com

Stephen M. Wolf (*Pro Hac Vice*)
Clark Hill PLC
2001 Market Street
Suite 2600
Philadelphia, Pennsylvania 19103
T: (215) 640-8500
F: (215) 640-8501
smwolf@clarkhill.com

Dated: February 27, 2024